IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  07-cv-00396-WYD-KLM

NXGEN, LLC, a Colorado limited liability company,

    Plaintiff,

v.

MARK O. DEJONGE;
JIM CLIFFORD; and
OPSTOCK, INC., a Michigan corporation,

    Defendants.

**ORDER**

I.    <u>INTRODUCTION AND BACKGROUND</u>

THIS MATTER is before the Court on Plaintiff's Motion for Preliminary Injunction, filed July 11, 2007 (docket #12). A full-day hearing on the motion took place on September 17, 2007.

According to the allegations in the Complaint and Jury Demand, filed February 26, 2007, Plaintiff NxGen LLC ("NxGen") is a Colorado limited liability company in the business of designing and manufacturing raised access floor panels under the Trademark TRIAD. Complaint at ¶ 7. NxGen alleges that its novel and original works in floor panels include a unique fabrication process, unique combinations and configurations of floor panels, and certain Software and CAD documentation. Complaint at ¶ at 8. NxGen alleges that in September 2004, it formed a new venture with Defendant Opstock, Inc. ("Opstock") wherein Defendant Opstock agreed to pay

NxGen for its intellectual property relative to the TRIAD products so that Opstock could manufacture, use, market, promote and distribute the TRIAD products on behalf of NxGen.  Complaint at ¶¶ at 11-13.  The parties allegedly memorialized their agreement in a Sales & Manufacturing / Rights License Agreement (the "License Agreement") on or about August, 2005.  Complaint at ¶ at 14.

NxGen alleges that on or about November 2006, Defendants violated the License Agreement by using NxGen's intellectual property to fabricate and sell a competing line of floor panel products under the Opstock Trademark INFINITY.  Complaint at ¶¶ at 16-17.  According to NxGen, Opstock's INFINITY series of floor panel products "have caused, and will continue to cause, actual confusion in the market place, and has interfered with the sales of the TRIAD floor products to NxGen's customers."  Complaint at ¶ at 18.  Based on these allegations, NxGen brings seven claims for relief for Breach of Confidence, Promissory Estoppel, Breach of the Joint Venture Agreement, Breach of Express Contract, Misappropriation of Trade Secret, Interference with Prospective Business Advantage, and Unfair Competition.

On July 11, 2007, NxGen filed its Motion for Preliminary Injunction in which it asserts that Defendants have engaged, and are continuing to engage, "in a course of conduct which tortiously interferes with NxGen's business opportunities, breaches contractual rights agreed upon between the parties, and has improperly caused NxGen's customers to believe that the TRIAD product line is no longer available."

According to allegations in the motion for preliminary injunction, the NxGen TRIAD floor panels are a retrofit design manufactured using a unique virtual fabrication

process which includes coatings, air flow perforations, recessed handles, panel locking systems, and panel leveler systems, and that as of June 2004, the TRIAD products were the only products in the market containing these novel elements.

In response to the motion for preliminary injunction, Defendant Opstock asserts that while it agreed to serve as a "buyer/dealer" for the TRIAD product, it never entered an "exclusive" dealership arrangement, or any non-compete agreement, with NxGen. Defendants also maintain that the parties a formal License Agreement was never executed. In addition, Defendants contend that the TRIAD product is a custom design built to customer specifications, and that Opstock received many customer complaints regard the TRIAD product including complaints concerning poor quality, improper fit, and late deliveries. According to Defendants, NxGen's failures to meet customer expectations resulted in the discontinuation of the parties' buyer/dealer relationship in August 2006, and Opstock's decision to proceed with plans to design and sell a retro-fit product. Defendants deny that they obtained, or used confidential information in the development of the INFINITY product. Defendants also deny that they ever made any representations to customers regarding the availability of the TRIAD product. The parties vigorously dispute the nature of their relationship as well as whether NxGen ever provided Defendants with any confidential or proprietary information. The parties agree that they never entered any type of non-compete agreement, although NxGen asserts that it requested a confidentiality agreement on several occasions, but that Defendants refused to sign such an agreement.

NxGen seeks to enjoin Defendants from "manufacturing, using, distributing, or

selling the Opstock Infinity line of raised access floor panels which are similar to the NxGen TRIAD product line, using NxGen's trade secrets, and unlawfully interfering with sales of the TRIAD product line."

## II. ANALYSIS

A federal court sitting in diversity must apply federal standards to preliminary injunctive relief.  *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990).  The primary purpose of a preliminary injunction is to preserve the status quo pending a final determination of the parties' rights.  *Otero Savings and Loan Ass'n v. Federal Reserve Bank of Kansas City, Mo.*, 665 F.2d 275 (10th Cir. 1981).

"Ordinarily, a movant seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest.  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.* 269 F.3d 1149, 1154 (10th Cir. 2001); *see also SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).  "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal."  *Dominion Video*, 269 F.3d at 1154.

"For certain types of preliminary injunctions, the movant has a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor before obtaining a preliminary injunction.  *Dominion Video*, 269 F.3d at 1154.  "The heightened burden applies to preliminary injunctions that (1) disturb the status

quo; (2) are mandatory as opposed to prohibitory; or (3) provides the movant substantially all the relief it could feasibly obtain after a full trial on the merits." *Id.* at 1154-55. The above types of injunctions are disfavored. *Id.* at 1155. Where the heightened burden does apply, the Tenth Circuit has indicated that "'the movant will ordinarily find it difficult to meet its heavy burden of showing that the four factors, on balance, weigh heavily and compellingly in its favor, without showing a substantial likelihood of success on the merits.'" *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001) (quoting *SCFC ILC, Inc. v. Visa USA*, Inc., 936 F.2d 1096, 1101 n. 11 (10th Cir. 1991)).

In this case, I find that the injunctive relief requested by NxGen is mandatory, in that they are seeking enjoin Defendants from manufacturing, using, distributing or selling the INFINITY product line. In addition, it appears that Defendants have been selling the INFINITY product for over one year prior to the filing of the instant motion for preliminary injunction, such that the requested relief would disturb the status quo. Therefore, I find that the heightened burden applies in this case. I further find, for the reasons set forth on the record and in this Order, that NxGen has failed to meet its heavy burden of demonstrating that all four preliminary injunction factors weigh compellingly in its favor.

The Tenth Circuit has held that "'[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" *Dominion*

*Video*, 356 F.3d at 1260 (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (internal quotations omitted)).  Irreparable injury is established "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video*, 269 F.3d at 1156.  The injury 'must be both certain and great,' . . . and . . . must not be 'merely serious or substantial.'" *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (quotation omitted).

NxGen asserts that if it prevails on its claims against Defendants, it will be entitled to damages equal to lost profits, as well as damages associated with the loss of significant market potential as a result of Defendants' alleged false representations, and that it would have great difficulty proving these damages with any precision at trial.  Defendants assert that the only harm NxGen will suffer is monetary loss, and that it cannot demonstrate irreparable harm.

The Colorado Uniform Trade Secrets Act permits recovery of both compensatory damages and lost profits attributable to the misappropriation.  C.R.S. § 7-74-104(1).  Damages in trade secret appropriation cases are often difficult to ascertain with certainty.  *Sonoco Products Co. v. Johnson*, 23 P.3d 1287, 1289 (Colo. App. 2001).  At the hearing, however, NxGen could not articulate why it would be difficult or impossible to calculate damages in this case, other than to note that Defendants had not yet provided the discovery NxGen sought with respect to sales of its INFINITY product.  On the record before me, I find that NxGen failed to demonstrate that it would suffer irreparable harm absent injunctive relief.

Because NxGen cannot demonstrate irreparable injury, I need not consider the remaining preliminary injunction factors. However, I note that at this stage of the proceedings NxGen cannot demonstrated a substantial likelihood that it will prevail on the merits of its claims. Trade secret law is governed by state law. Under Colorado law, the elements of a claim for misappropriation of a trade secret are: (I) the Plaintiff possessed a valid trade secret; (ii) the trade secret was used or disclosed without consent; and (iii) the Defendant knew, or should have known, that the trade secret was acquired by improper means. *Gates Rubber Co. v. Bando Chemical Industries, Ltd*, 9 F.3d 823 (10th Cir. 1993). "Misappropriation" of a trade secret means "(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (b) disclosure or use of a trade secret of another without express or implied consent by a person who: (I) used improper means to acquire knowledge of the trade secret; or (II) At the time of disclosure or use, knew or had reason to know that his knowledge was. . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." C.R.S. § 7-74-102(2).

Here, there exists a substantial dispute regarding whether the information NxGen provided to Defendants constitutes a protectable "trade secret." NxGen contends that Defendants acquired access to their trade secrets relating to the fabrication and design of the TRIAD product under various express and implied agreements and then used those trade secrets to fabricate and see the INFINITY product without NxGen's consent. Defendants contend that NxGen cannot claim a trade secret exists with respect to the design and specifications for the TRIAD product

because NxGen has made all information related to the design of its product available to the pubic through its website and has made no effort to limit disclosure of this information.

I also note that NxGen has not shown that the harm it would sustain without an injunction outweighs the potential harm of an injunction to the alleged infringer. *Autoskill, Inc. v. Nat'l Educational Support Systems, Inc.*, 994 F.2d 1476, 1498 (10th Cir. 1993). Defendants testified that "99.9%" of Opstock's business involves manufacture and sales of the INFINITY product, and contend that Opstock's business "would be devastated" by an injunction and would result in Opstock's demise. Given Plaintiff's delay in requesting injunctive relief and inability to demonstrate irreparable injury, I cannot find that the threatened injury to NxGen outweighs the potential devastation of Defendants' business. Finally, while granting a temporary restraining order or permanent injunction in a case involving protection of trade secrets is not contrary to the public interest, *see* C.R.S. § 7-74-101 *et. seq*, based on the record developed to date, I cannot say that this factor weights heavily in NxGen's favor.

III.   CONCLUSION

In conclusion, for the reasons stated herein, it is hereby

ORDERED that Plaintiff's Motion for Preliminary Injunction, filed July 11, 2007 (docket #12) is **DENIED**.

Dated: September 20, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge